UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                               Case No. 3:13-cr-00021

        Plaintiff

       v.                                           MEMORANDUM OPINION
                                                                 AND ORDER

Justin A. Eckenrode,

        Defendant

### INTRODUCTION AND BACKGROUND

On November 4, 2012, members of the Rossford, Ohio Police Department went to Justin Eckenrode's residence to investigate several messages posted on the Rossford Police Department Facebook page.[1] (Doc. No. 1-1 at 2). Eckenrode acknowledged using Facebook the night before but stated he did not remember what he posted. (Id.). During a search of Eckenrode's residence, Rossford police officers "seized a Smith & Wesson, model MP-15, .223 caliber semiautomatic rifle, a 30-round magazine, a 10-round magazine, and 40 rounds of .223 caliber ammunition." (Id.). Eckenrode was arrested for aggravated menacing but later released.

The incident subsequently attracted the attention of federal authorities and, on January 9, 2013, Eckenrode was indicted for "knowingly transmitt[ing] in interstate and foreign commerce an electronic communication . . . [which] contained a threat to injure the person of another . . . in violation of [18 U.S.C. § 875(c)]." (Doc. No. 16 at 1). Eckenrode has filed a motion in limine

---

[1] The government alleges Eckenrode posted two comments on the Rossford Police Facebook page: (1) "so I guess its that time for me if you come to my house for any reason you will die…sry" and (2) "WHAT YOU WAITING FOR THE DEATH OF OTHERS? That should be my only curse." (Doc. No. 1-1 at 2).

requesting an order "prohibiting reference [to] or admission [of] the following potential evidentiary items: (1) the purchase, possession, and recovery of the MP 15 [rifle], ammunition, and [firearm] magazine[s] recovered on November 4, 2012; [and] (2) [a]ny reference to Facebook postings made by Eckenrode subsequent to the November 4, 2012 [charged] offense." (Doc. No. 24 at 2). The government opposes Eckenrode's motion as to the weapons, ammunition, and magazines, but states it does not intend to offer evidence regarding the subsequent Facebook posts at trial. (Doc. No. 30 at 2, 10).

## STANDARD

Section 875(c) "prohibits 'any' interstate 'communication' that 'contain[s] any threat to . . . injure the person of another.'" *United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012) (*citing* 18 U.S.C. § 875(c)). The government must "establish that the defendant (1) made a knowing communication in interstate commerce that (2) a reasonable observer would construe as a true threat to another." *Jeffries*, 692 F.3d at 478. The Sixth Circuit is among the federal courts of appeal that apply an objective test: "if a reasonable person would foresee that an objective rational recipient of the statement would interpret its language to constitute a serious express of intent to harm, . . . that message conveys a 'true threat.'" *United States v. Miller*, 115 F.3d 361, 363 (6th Cir. 1997) (*quoting United States v. Smith*, 928 F.2d 740, 741 (6th Cir. 1991), *cert. denied*, 502 U.S. 852 (1991)). A court must determine whether the communication contains a true threat "objectively from all the surrounding facts and circumstances." *United States v. DeAndino*, 958 F.2d 146, 148 (6th Cir. 1992).

## ANALYSIS

Eckenrode asserts his "actual ability or intent to carry through with a threat, as evidenced by the [weapons and ammunition], is expressly immaterial . . . [to] the scope of what was communicated in the Facebook postings on November 4 and cannot be properly introduced at trial." (Doc. No. 24 at 3-4). He notes the Facebook messages "did not contain reference to *any* weapon nor was the recipient . . . aware that Eckenrode possessed a weapon when the threat was made." (Id. at 5).

The government argues evidence concerning Eckenrode's purchase and possession of the weapons and ammunition is admissible to establish the context in which the messages were communicated, and are relevant to assist the trier of fact in determining whether the communication contains a "true threat." (Doc. No. 30 at 3-4). The government states the Sixth Circuit has not directly considered the issue of "how familiar with the context of the communication . . . a "reasonable person," and consequently the jury, [is] permitted to be[.]" (Id. at 3). The government contends the Seventh Circuit, however, has rejected the crux of Eckenrode's argument – that the context of the communication is shaped only by "the perspective of 'those to whom the maker communicates a statement'" – in *United States v. Parr*, 545 F.3d 491 (7th Cir. 2008). (Doc. No. 30 at 5) (*quoting Parr*, 545 F.3d at 501).

In *Parr*, the defendant "was convicted of threatening to use a weapon of mass destruction against a federal government building" in violation of 18 U.S.C. § 2332a(a)(3), which criminalizes such conduct. The Seventh Circuit examined Parr's challenge to his conviction by analyzing whether the statements that led to his indictment and subsequent conviction were "true threats" left unprotected by the First Amendment. *Parr*, 545 F.3d at 496-97 (*citing Watts v. United States*, 394 U.S. 705, 707 (1969)). Parr had threatened to bomb a federal building in Milwaukee, Wisconsin, and the government presented evidence and witness testimony to show Parr had a "pervasive interest in explosives and domestic terrorism, . . . [a] long history of building pipe bombs, storing explosives, and experimenting with chemicals [and] his admiration for domestic terrorists Ted Kaczynski and Timothy McVeigh . . . ." *Parr*, 545 F.3d at 498. The court reasoned that in order to determine "whether Parr's statements were true threats, the jury needed to make inferences from the background and context about his demeanor at the time he made the statements" and concluded the trial court properly admitted the testimony and evidence. *Id.*

Eckenrode argues "*Parr* is distinguishable [because] (1) the Seventh Circuit follows a subjective intent standard rather than the objective standard to determine whether a communication

3

is a true threat[,] and (2) the facts of *Parr* differ substantially from the current case." (Doc. No. 32 at 3). Eckenrode's first contention is not persuasive. The Seventh Circuit has consistently applied an objective standard to "true threat" determinations. *See, e.g., United States v. Hoffman*, 806 F.2d 703, 707 (7th Cir. 1986) (stating the government is required to demonstrate "a reasonable person" would foresee the statement would be interpreted as a threat); *United States v. Fuller*, 387 F.3d 643, 647 (7th Cir. 2004) (requiring proof of a subjective intention to carry out a threat would thwart the goal of statute criminalizing communications of threats against the President); *see also Jeffries*, 692 F.3d at 479 (noting the Seventh Circuit had "expressly rejected an additional subjective requirement in construing [§ 875(c)] and related threat prohibitions"). While the *Parr* court posited that a plurality of the Supreme Court, in discussing "true threats" in *Virginia v. Black*, 538 U.S. 343 (2003), may have made "an entirely objective definition . . . no longer tenable," the *Parr* court explicitly stated it "need not resolve the issue" in that case. *Parr*, 545 F.3d at 500. Further, Judge Sutton has offered similar sentiments while acknowledging "Sixth Circuit precedent compels [the] interpretation of § 875(c) . . . that requires the government to prove only that a reasonable observer would construe the communicated words as a threat, not that the defendant meant the words to be a threat as well." *Jeffries*, 692 F.3d at 483 (Sutton, J., dubitante); *see also, id.* at 485 ("The statute should require first what the words say (a subjectively intended threat) and second what constitutional avoidance principles demand (an objectively real threat)").

Eckenrode's second argument fares better. Parr had threatened to bomb a federal building in Milwaukee, offering details including "the number of detonators and drums of explosives he would use, where he would park, and how he would deflect suspicion" in placing the bomb, as well as "his past experiences with manufacturing and detonating homemade explosives." *Id.* at 494-95.

4

The court reasoned the context of the communication made evidence concerning Parr's past conduct relevant to the jury's assessment of the seriousness of his statements.[2] *Id.* at 498.

Eckenrode's statements did not contain similar specificity – in particular, Eckenrode did not state or imply he would shoot any officers who came to his residence. The potential evidence to which Eckenrode objects is more likely to support an inference that Eckenrode was capable of acting on the threat. Contrary to the government's assertions, this evidence would expand rather than inform the appropriate scope of the context of the communication. Therefore, the likelihood that the weapons and ammunition evidence would lead a reasonable person to conclude a recipient of the Facebook messages would believe Eckenrode was serious is outweighed by the likelihood that evidence would be unfairly prejudicial. I conclude the contested evidence is excludable under Fed. R. Evid. 403. Eckenrode's motion to exclude evidence regarding his purchase and possession of the weapons and ammunition is granted.

Though it does not affect my conclusion, I think it is important that I respond to Eckenrode's contention that the only entity that may be considered as the recipient of the Facebook messages is the Rossford Police Department. (*See, e.g.,* Doc. No. 32 at 6). Eckenrode is wrong for two reasons. First, he impermissibly equates the target of the statement with the "objective rational recipient" identified in case law by the Sixth Circuit and other courts. *See, e.g., Miller*, 115 F.3d at 363; *cf. Jeffries.*, 692 F.3d at 483 (noting the judge who was the target of the defendant's threat "was not the only receiver of the communication"). Second, Eckenrode's postings were on the Rossford Police Department's Facebook page, and thus viewable by other Facebook users. His statements were public and Eckenrode cannot avoid the practical implications of the medium he chose to communicate his statements.

---

[2] Parr also placed his subjective intentions at issue by requesting (and receiving) a jury instruction "telling jurors they could convict only if Parr 'intended his statement to be understood' as a threat." *Parr*, 545 F.3d at 500. This aspect of that case does not apply here, as Eckenrode has not similarly placed the issue of his subjective intent before me.

As I noted above, the government does not intend to offer evidence relating to Facebook messages Eckenrode posted after the date of his arrest.  Therefore, that portion of Eckenrode's motion is denied as moot.

## CONCLUSION

For the reasons stated above, Eckenrode's motion in limine is granted in part and denied in part as moot.  The government may not offer evidence of Eckenrode's purchase and possession of weapons and ammunition, or the recovery of those items, as proof his statements contained a true threat.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge